Vincent F. Papalia, Esq.
James H. Forte, Esq.
Mark A. Roney, Esq.
**SAIBER LLC**
One Gateway Center, 13th Floor
Newark, New Jersey 07102-5311
(973) 622-3333

- and -

**MOSKOWITZ, MANDELL, SALIM & SIMOWITZ, P.A.**
800 Corporate Drive, Suite 500
Fort Lauderdale, Florida 33334
(954) 491-2000

*Attorneys for Coastal Marina, LLC*
*and Coastal Development, LLC*

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>TCI 2 HOLDINGS, LLC, *et al.*,<br><br>Debtors. | Case No. 09-13654 (JHW)<br>(Jointly Administered)<br><br>Chapter 11<br><br>Honorable Judith H. Wizmur |
| COASTAL MARINA, LLC and COASTAL DEVELOPMENT, LLC,<br><br>Plaintiffs,<br>v.<br><br>TRUMP MARINA ASSOCIATES, LLC, TRUMP ENTERTAINMENT RESORTS, INC., MARK JULIANO, ROBERT M. PICKUS, TRUMP PLAZA ASSOCIATES, LLC, TRUMP TAJ MAHAL ASSOCIATES, LLC, ABC CORPORATIONS 1-100 and JOHN DOES 1-100,<br><br>Defendants,<br><br>and<br><br>FIDELITY NATIONAL TITLE INSURANCE COMPANY,<br><br>Nominal Defendant. | Adversary Case No. 09-<br><br>**ADVERSARY COMPLAINT TO RECOVER PROPERTY AND FOR DECLARATORY AND OTHER RELIEF** |

Plaintiffs Coastal Marina, LLC (hereinafter "Coastal Marina") and Coastal Development, LLC (hereinafter "Coastal Development" and with Coastal Marina collectively referred to as the "Coastal Parties"), through their undersigned attorneys, hereby allege for their *Adversary Complaint to Recover Property and for Declaratory and Other Relief* against defendants Trump Marina Associates, LLC (hereinafter "Trump Marina"), Trump Entertainment Resorts, Inc. (hereinafter "Trump Entertainment"), Mark Juliano, Robert M. Pickus, Trump Plaza Associates, LLC, Trump Taj Mahal Associates, LLC, ABC Corporations 1-100 and John Does 1-100, and nominal defendant Fidelity National Title Insurance Company, as follows:

## INTRODUCTION

1.      Plaintiffs Coastal Parties seek redress based upon fraudulent and calculated conduct by defendants and others that induced the Coastal Parties to make $17,000,000 in deposits and incur millions of dollars of costs and expenses toward the purchase of the Trump Marina Hotel and Casino (hereinafter the "Casino") while, unbeknownst to the Coastal Parties, the defendants intended to strip the Casino of its valuable customers and key personnel, destroy its image with its potential and current patrons, and let the Casino fall into a complete state of disrepair such that no lender would ever finance its purchase.

2.      The specific fraudulent misrepresentations and omissions of defendants include their unequivocal statements that they would maintain the Casino in good repair and condition from the date of the parties' execution of the Asset Purchase Agreement through the closing of its purchase and complete substantial and necessary capital improvements, and had the ability, financial or otherwise, to perform their obligations

under the Asset Purchase Agreement. These defendants made these misrepresentations and omissions with the intent to induce the Coastal Parties to execute the Asset Purchase Agreement and pay an initial deposit of $15,000,000 to an escrow agent. Compounding their unlawful acts, defendants continued to make these and other misrepresentations (along with failing to cure the omissions) that induced the Coastal Parties to execute a First Amendment to the Asset Purchase Agreement under which the Coastal Parties agreed to release their $15,000,000 deposit to Trump Marina and pay an additional $2,000,000 deposit to an escrow agent.

3.      In addition to their fraud, defendants Trump Marina and Trump Entertainment materially breached several covenants of the Asset Purchase Agreement that required them to maintain the Casino as an upscale, luxurious property, to strive to maintain current customers and attract new customers, and to retain their key employees. Defendants Mark Juliano, Robert M. Pickus, Trump Plaza Associates, LLC, Trump Taj Mahal Associates, LLC, ABC Corporations 1-100 and John Does 1-100 also tortiously interfered with the contractual rights of the Coastal Parties by diverting business from the Casino to other casinos owned and/or controlled, directly or indirectly by Trump Entertainment, including, but not limited to, Trump Plaza Associates, LLC and Trump Taj Mahal Associates, LLC.

4.      As a direct and proximate result of the continuing fraud, breach of contract, tortious interference and other tortious conduct by defendants and others described herein, the Coastal Parties are entitled to rescind the Asset Purchase Agreement, the return of their initial $15,000,000 deposit plus interest, the release from escrow of their additional $2,000,000 deposit plus interest, compensatory and consequential damages (including, but not limited to, consulting, architectural,

engineering and legal fees and other costs and expenses incurred in connection with the Asset Purchase Agreement and First Amendment) and punitive damages.

## PARTIES

5.      Plaintiff Coastal Marina is a limited liability company organized and existing under the laws of the State of New Jersey with a principal place of business at 1 East 57th Street, New York, New York.

6.      Plaintiff Coastal Development is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business located at 1 East 57th Street, New York, New York.

7.      Defendant Trump Marina is a limited liability company organized and existing under the laws of the State of New Jersey with a place of business located at Huron Avenue and Brigantine Boulevard, Atlantic City, New Jersey.

8.      Defendant Trump Entertainment is a corporation organized and existing under the laws of the State of Delaware with a place of business located at 15 South Pennsylvania Avenue, Atlantic City, New Jersey.

9.      Defendant Mark Juliano (hereinafter "Juliano") is a Director and the Chief Executive Officer of Trump Entertainment, which has a place of business located at 15 South Pennsylvania Avenue, Atlantic City, New Jersey. Juliano was one of the primary persons with whom the Coastal Parties negotiated the Asset Purchase Agreement and First Amendment to the Asset Purchase Agreement.

10.     Defendant Robert Pickus (hereinafter "Pickus") is the Chief Administrative Officer and General Counsel of Trump Marina and Trump Entertainment, which has a place of business located at 15 South Pennsylvania Avenue, Atlantic City, New Jersey. Pickus was also one of the primary persons with whom the Coastal Parties

negotiated the Asset Purchase Agreement and First Amendment to the Asset Purchase Agreement.

11.     Defendant Trump Plaza Associates, LLC (hereinafter "Trump Plaza") is a limited liability company organized and existing under the laws of the State of New Jersey with a place of business located at Mississippi Avenue and Boardwalk, Atlantic City, New Jersey.

12.     Defendant Trump Taj Mahal Associates, LLC (hereinafter "Trump Taj Mahal") is a limited liability company organized and existing under the laws of the State of New Jersey with a place of business located at 1000 Boardwalk, Atlantic City, New Jersey.

13.     Defendants John Does 1-100 are certain currently unknown officers or employees of the defendants and/or their affiliates who engaged in the fraudulent and tortious conduct alleged herein.

14.     Defendants ABC Corporations 1-100 are certain currently unknown corporations who engaged in the fraudulent and tortious conduct alleged herein and also may have received and/or are in possession of the sums comprising the $15,000,000 initial deposit.

15.     Nominal Defendant Fidelity National Title Insurance Company (hereinafter "Fidelity National") has a place of business located at 1 Park Avenue, Suite 1420, New York, New York.  Fidelity National is named as a nominal defendant herein because it is the escrow agent and currently in possession of the $2,000,000 deposit made under the First Amendment to the Asset Purchase Agreement.

## JURISDICTION, VENUE AND STATUTORY AUTHORITY

16.     This adversary proceeding is brought in accordance with Rule 7001 of the Federal Rules of Bankruptcy Procedure.

17.     The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

18.     The venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

19.     Counts I through IV and Counts VII through IX are non-core proceedings related to the jointly administered bankruptcy matters and Counts V and VI are core proceedings pursuant to 28 U.S.C. § 157(b)(2) (A), (E), and (N).

## FACTUAL BACKGROUND

### A.     The Chapter 11 Filings

20.     On or about February 17, 2009 Trump Marina filed a petition under Chapter 11 of the Bankruptcy Code and the matter was assigned Bankruptcy Case No. 09-13662.

21.     On or about February 17, 2009, Trump Entertainment filed a petition under Chapter 11 of the Bankruptcy Code and the matter was assigned Bankruptcy Case No. 09-13655.

22.     On or about February 17, 2009, Trump Plaza filed a petition under Chapter 11 of the Bankruptcy Code and the matter was assigned Bankruptcy Case No. 09-13661.

23.     On or about February 17, 2009, Trump Taj Mahal filed a petition under Chapter 11 of the Bankruptcy Code and the matter was assigned Bankruptcy Case No. 09-13660.

24.     On February 18, 2009, this Court entered an order providing for the joint administration of Trump Marina's, Trump Entertainment's, Trump Plaza's and Trump Taj Mahal's cases along with those of TCI 2 Holdings, LLC (Case No. 09-13654: the Lead Case), Trump Entertainment Resorts Holdings, L.P., Trump Entertainment Resorts Funding, Inc., Trump Entertainment Resorts Development Company, L.P., TER Management Co., LLC and TER Development Co., LLC.

25.     Trump Marina has remained in possession of its assets, including the Purchased Assets (as defined below), and has continued to operate the Casino as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

26.     No Order has been entered by the Bankruptcy Court assuming or rejecting the Asset Purchase Agreement or authorizing its purported termination.

**B.      The Asset Purchase Agreement
          and The Representations Made Therein**

27.     The Coastal Parties, Trump Marina and Trump Entertainment entered into the Asset Purchase Agreement as of May 28, 2008 (hereinafter the "Agreement"). Pursuant to Articles 1 and 2 of the Agreement, Trump Marina agreed to sell and Coastal Marina agreed to buy the Casino, all cash and cash equivalents located at the Casino at the time of transfer and various other property related to the business of Trump Marina (hereinafter the "Purchased Assets") for the sum of Three Hundred and Sixteen Million Dollars ($316,000,000), plus or minus certain agreed upon adjustments to be determined at closing (hereinafter the "Purchase Price").

28.     Pursuant to Section 2.2 of the Agreement, simultaneously with the execution and delivery of the Agreement, Coastal Marina deposited $15,000,000 with nominal defendant Fidelity National Title Company in accordance with an escrow

agreement executed and delivered by Coastal Marina, Trump Marina and it (hereinafter the "$15,000,000 Initial Deposit").

29.    Article IV of the Agreement provides that the closing of the transactions contemplated by the Agreement, including the purchase and sale of the Purchased Assets (hereinafter the "Closing"), shall take place on the third business day following the satisfaction or waiver of the required conditions in Article VIII (hereinafter the "Target Closing Date") but no later than the earlier of the twenty-first day after the Target Closing Date and the Outside Date, which was defined as nine (9) months after the date of the Agreement, which may be extended by Coastal Marina for two additional months, so long as certain provisions were met or diligently being pursued.

30.    In an attempt to ensure that Trump Marina and Trump Entertainment maintained the Casino as a luxurious resort between the date of the execution of the Agreement and the Closing and/or did not divert customers or key employees to other properties owned by affiliates of Trump Marina and Trump Entertainment, the Coastal Parties required Trump Marina and Trump Entertainment to covenant and represent, among other things, that they would maintain the Casino in its condition as of the date of the Agreement and take all reasonable steps necessary to ensure that Trump Marina maintained its customer relationships and key employees.

31.    Specifically, in Section 7.1(a) of the Agreement, entitled "Conduct of Business of Seller," Trump Marina and Trump Entertainment covenanted and represented that, during the period from the date of the Agreement and continuing until the earlier of the termination of the Agreement or the Closing, that they would "carry on [Trump Marina's] business in the usual, regular and ordinary course in substantially the same manner as previously conducted . . . and, to the extent consistent with the operation of the

Purchased Assets in the Ordinary Course of Business, use commercially reasonable efforts consistent with past practices and policies to preserve intact its present business organization, keep available the services of its present key employees and preserve its relationships with customers . . . ."

32.    Similarly, in Section 7.1(a)(ix) of the Agreement, Trump Marina and Trump Entertainment covenanted and represented that, during the period from the date of the Agreement and continuing until the earlier of the termination of the Agreement or the Closing, would not "fail to maintain the [Casino] in its current repair and condition in all material respects, ordinary wear and tear excepted."

33.    In Section 7.4(a) of the Agreement, entitled "Maintenance of Assets; Budgeted Capital Expenditures; Ownership of Purchased Assets," Trump Marina further covenanted and represented that, during the period from the date of the Agreement, it would maintain the Casino "in the Ordinary Course of Business and consistent with past practice, ordinary wear and tear excepted" and would "make the budgeted capital expenditures set forth in Section 7.4 of the Seller Disclosure Letter within the time periods and amounts indicated thereon."    Among the budged capital expenditures identified in Section 7.4 were to replace dampers throughout the Casino to improve air flow, upgrade the fire and life safety alarm system, repair the garage (including the floors), repair the Marina bulkhead and repair the roof.

34.    Under the heading of "Additional Conditions to Obligations of Buyer," Section 8.2 of the Agreement provides that "[t]he obligation of Buyer to effect the Closing is subject to each of the following conditions on or prior to the Closing Date . . . ."    One of the "following conditions" to Coastal Marina's obligation to close the transaction is that Trump Marina "shall have performed in all material respects all

covenants, agreements and obligations required to be performed by it under this Agreement at or prior to the Closing," including, but not limited to, the covenants, agreements and obligations set forth in Sections 7.1 and 7.4 of the Agreement.

### C.    The First Amendment

35.    As of October 28, 2008, the Coastal Parties, Trump Marina and Trump Entertainment entered into a First Amendment to the Agreement (hereinafter the "First Amendment").

36.    Paragraph 19 of the First Amendment provides that "[a]s expressly amended by this Amendment, all of the terms and provisions of the [Agreement] shall remain in full force and effect." The First Amendment did not amend any of Trump Marina's and Trump Entertainment's covenants and representations under Sections 7.1, 7.4 or 8.2 of the Agreement.

37.    Pursuant to paragraphs 1 and 4 of the First Amendment, respectively, and in reliance upon Trump Marina's and Trump Entertainment's covenants and representations in the Agreement and concerning its financial ability to perform thereunder, among other misrepresentations, Coastal Marina agreed to cause the $15,000,000 Initial Deposit together with interest thereon to be released from escrow and delivered to Trump Marina, and to provide an additional $2,000,000 to be held in escrow by Fidelity National Title Insurance Company (hereinafter the "$2,000,000 Subsequent Deposit").

38.    In further reliance upon, among other representations, Trump Marina's and Trump Entertainment's covenants and representations, the Coastal Parties agreed in the First Amendment that Section 9.3(a) of the Agreement, which authorized the return of the $15,000,000 Initial Deposit to Coastal Marina on certain conditions, would be revised

to provide that the $15,000,000 Initial Deposit was "fully earned by [Trump Marina] and under no circumstances shall the Initial Deposit be returned to [Coastal Marina] . . . except in the event of actual fraud by [Trump Marina], [Trump Entertainment] or any of their Affiliates" and to delete the Coastal Parties' right to terminate and obtain the return of their $15,000,000 Initial Deposit in the event that a Catastrophic Market Material Adverse Effect (as defined in the Agreement) shall have been in effect.

39.     Paragraph 15 of the First Amendment also amended the definition of Outside Date to extend the date for the Closing. Specifically, the definition of Outside Date was amended to mean "May 28, 2009, which may be extended by [Coastal Marina] for an additional two months" as long as Coastal Marina was in compliance with certain provisions of the Agreement and its other covenants, and subject to other conditions.

**D.     Trump Marina and Trump Entertainment Permit The Casino
To Fall Into a State of Disrepair**

40.     After the First Amendment, the Coastal Parties hired, among others, architects and engineers to inspect the Casino in connection with certain proposed renovations that the Coastal Parties intended to make post-Closing.

41.     As a result of these inspections, the Coastal Parties discovered that, as part of Trump Marina's and Trump Entertainment's fraudulent scheme designed to bilk the Coastal Parties out of their $15,000,000 Initial Deposit and $2,000,000 Subsequent Deposit, Trump Marina and Trump Entertainment had performed few, if any, of the repairs that were necessary to maintain the Casino in its condition as of the date of the Agreement and in the ordinary course of business consistent with their past practice or had not begun or failed to complete most of the capital projects identified in Section 7.4 of the Seller Disclosure Letter.

42.    Examples of the manner in which Trump Marina and Trump Entertainment allowed the Casino to fall into a state of disrepair include, but are not limited to, (a) the failure to complete the planned replacement of the energy management system, which has resulted in the failure of the system to work properly and the lack of fresh air in the Casino; (b) windows leaking throughout the Casino; (c) inadequate air conditioning and no fresh air in the roof top units of the Crystal Tower, including an open air conditioning unit with two frozen coils and also air fans that are not moving; (d) the deterioration of the exterior soffits at the Crystal Tower, which exposes the tower to wind and bad weather; (e) original kitchen equipment that has been removed and not replaced for the Marina Building; and (f) the air conditioning at the Casino was antiquated and had exceeded its useful life, resulting in numerous customer complaints and numerous hotel rooms that could not be booked, and in need of replacement.

43.    The work identified in Section 7.4 of the Seller Disclosure Letter that Trump Marina and Trump Entertainment failed to start and/or complete includes, but is not limited to, (a) repairs to the garage floors, (b) the upgrade of the fire and life safety alarm system, (c) repair to the Marina bulkhead, and (d) repairs to the roof and skylights. Indeed, rather than repair the roof and skylights, Trump Marina resorted to using drip pans and placing plants underneath the leaks.

44.    In total, the cost of completing the necessary and ordinary maintenance of the Casino which Trump Marina and Trump Entertainment had neglected and ignored, along with the completion of the work identified in Section 7.4 of the Seller Disclosure Letter, is estimated to be no less than fifty million dollars ($50,000,000).

45.    The failure of the Trump Marina and Trump Entertainment to make the required maintenance and repairs and to complete the work identified in Section 7.4 of

the Seller Disclosure Letter has negatively impacted the Casino and its business reputation in the form of customer complaints, a diminished reputation as to its quality and responsiveness, and a general perception that the Casino is far from the "ultimate in comfort and style" as Trump Marina describes itself on its website.

**E.    The Defendants' Diversion of Casino Personnel and Business**

46.     In addition to Trump Marina's and Trump Entertainment's failure to maintain the Casino and complete the agreed upon work identified in Section 7.4 of the Seller Disclosure Letter, Trump Marina, Trump Entertainment, Juliano, Pickus, Trump Plaza, Trump Taj Mahal, ABC Corporations 1-100 and John Does 1-100 also engaged in an intentional and surreptitious campaign to divert current and potential customers away from the Casino to the other hotels and casinos owned and/or controlled by affiliates of Trump Entertainment, Trump Plaza and Trump Taj Mahal..

47.     Trump Marina, Trump Entertainment, Juliano, Pickus, Trump Plaza, Trump Taj Mahal, ABC Corporations 1-100 and John Does 1-100 pr ovided Trump Marina's existing customers, including its major customers ("High Rollers"), with credits and vouchers for free hotel rooms and other gratuities to other hotels and casinos owned and/or controlled by Trump Entertainment and its affiliates, including Trump Plaza and Trump Taj Mahal.

48.     Trump Marina, Trump Entertainment, Juliano, Pickus, Trump Plaza, Trump Taj Mahal, ABC Corporations 1-100 and John Does 1-100 also caused to be transferred key marketing and customer relations personnel from the Casino to other hotels and casinos owned and/or controlled by Trump Entertainment and its affiliates, including Trump Plaza and Trump Taj Mahal.

**F.**   **Defendants' Knowing Concealments**

49.    Before the execution of the First Amendment, Trump Marina, Trump Entertainment, Juliano, Pickus, ABC Corporations 1-100 and John Does 1-100 failed to disclose that defendants' financial condition had taken a dramatic and irreversible turn for the worse -- which necessitated the filing of the instant bankruptcy proceedings less than four months after the execution of the First Amendment.

50.    Notwithstanding these defendants' knowledge that Trump Marina and Trump Entertainment were in dire financial straits, they represented to the Coastal Parties by entering into the Agreement, the First Amendment, and otherwise, that they were capable of meeting their obligations under the Agreement, Seller Disclosure Statement, and other financial obligations affecting the Casino.

51.    Only one month after it executed the First Amendment, which expressly ratified all of the terms, provisions, covenants and representations of the Agreement, on or about November 28, 2008, Trump Entertainment announced that it would not be making its $53 million bond interest payment due December 1, 2008. On February 17, 2009, approximately two and one half months later, Trump Marina and Trump Entertainment filed for bankruptcy protection.

52.    The representations that Trump Marina and Trump Entertainment were capable of meeting their obligations under the Agreement were intentionally false and designed to induce the Coastal Parties to execute the First Amendment under which they released the $15,000,000 Initial Deposit, provided the $2,000,000 Subsequent Deposit, and removed key provisions from the Agreement entitling them to a refund of the $15,000,000 Initial Deposit.

**G.    The Alleged Termination of the Agreement**

53.    Upon learning of the manner in which Trump Marina and Trump Entertainment, among others, had not honored their covenants and representations, on May 1, 2009, the Coastal Parties sent their counsel a letter addressing their "serious and ongoing failures" to maintain the quality of the facilities of the Casino.

54.    Trump Marina and Trump Entertainment failed to acknowledge the existence of their failures as identified by the Coastal Parties. Thereafter, the Coastal Parties, through counsel, sent Trump Marina and Trump Entertainment a letter advising that the failures resulted in a breach of the Agreement and First Amendment and set forth the discovery of their fraud.

55.    Rather then attempt to cure the breaches or otherwise take action, by letter dated June 1, 2009. Trump Marina sent notice of its alleged "termination" of the Agreement under Section 9.1(b) thereof notwithstanding the fact that Coastal Marina had no obligation to close the transaction in view of Trump Marina's and Trump Entertainment's breach of their covenants, obligations and agreements in Sections 7.12, 7.4 and 8.2 of the Agreement.

## COUNT I

**(Fraud Based Upon Material Misrepresentations
Against Trump Marina and Trump Entertainment)**

56.    They repeat and reallege the allegations set forth in paragraphs 1 through 55 of the Complaint as if set forth at length herein.

57.    Trump Marina and Trump Entertainment made material misrepresentations of fact in the Agreement, in the First Amendment and otherwise when they covenanted and represented that they would (a) "carry on [Trump Marina's]

business in the usual, regular and ordinary course in substantially the same manner as previously conducted . . . and, to the extent consistent with the operation of the Purchased Assets in the Ordinary Course of Business, use commercially reasonable efforts consistent with past practices and policies to preserve intact its present business organization, keep available the services of its present key employees and preserve its relationships with customers; " (b) would maintain the Casino "in the Ordinary Course of Business and consistent with past practice, ordinary wear and tear excepted;" and (c) would "make the budgeted capital expenditures set forth in Section 7.4 of the Seller Disclosure Letter within the time periods and amounts indicated thereon."

58.     At the time Trump Marina and Trump Entertainment made these material misrepresentations, they did so with the intention not to comply with them.

59.     At the time Trump Marina and Trump Entertainment made these material misrepresentations, they did so with the intent that Coastal Parties rely to their detriment upon them and with actual malice or a wanton and willful disregard of the harm to the Coastal Parties.

60.     In reasonable reliance upon Trump Marina's and Trump Entertainment's material misrepresentations, among other misrepresentations, the Coastal Parties entered into the Agreement and made the $15,000,000 Initial Deposit, and also entered into the First Amendment, made the $2,000,000 Subsequent Deposit, and agreed to release the $15,000,000 Initial Deposit to Trump Marina and waive any claim or right to the $15,000,000 Initial Deposit or its return.

61.     As a direct and proximate result of their reasonable reliance upon Trump Marina's and Trump Entertainment's misrepresentations, among other misrepresentations, the Coastal Parties have sustained substantial damages, including, but

not limited to, the payment of the $15,000,000 Initial and $2,000,000 Subsequent

Deposits and the cost of consultants, attorneys, architects and engineers, among other

costs.

**WHEREFORE**, plaintiffs Coastal Marina and Coastal Development hereby

demand judgment in their favor and against defendants Trump Marina and Trump

Entertainment as follows:

a.    For rescission of the Agreement and First Amendment;

b.    For compensatory damages;

c.    For the return of the $15,000,000 Initial Deposit;

d.    For the release of the $2,000,000 Subsequent Deposit to the
Coastal Parties;

e.    For consequential and incidental damages;

f.    For punitive damages;

g.    For attorneys' fees and costs; and,

h.    For all other and further relief as the Court deems just and
equitable.

## COUNT II

**(Fraud Based Upon Material Non-Disclosures**
**Against Trump Marina, Trump Entertainment, Juliano, Pickus and John Does 1-100)**

62.    They repeat and reallege the allegations set forth in paragraphs 1 through

61 of the Complaint as if set forth at length herein.

63.    During the negotiations leading up to the execution of the Agreement and

First Amendment, Trump Marina, Trump Entertainment, Juliano, Pickus and John Does

1-100 failed to disclose to the Coastal Parties that Trump Marina's and Trump

Entertainment's financial situation was so dire and precarious that they could not

financially perform their obligations under the Agreement and that they intended to divert key personal and business from the Casino to other casinos owned or controlled by Trump Entertainment or its affiliates.

64.    Trump Marina, Trump Entertainment, Juliano, Pickus and John Does 1-100 had a duty to exercise reasonable care to disclose the nature and extent of their financial condition and the impact on their duty to perform their obligations under the Agreement and also their intent to divert key personnel and business from the Casino because, among other reasons, (a) such disclosure was necessary to prevent their misrepresentations and covenants concerning their obligations to maintain the Casino in good repair and condition and to preserve its relationships with customers and maintain key employees from being untrue or misleading; and (b) they knew that the Coastal Parties were relying upon their financial wherewithal and efforts to maintain current business relationships and key employees, including High-Rollers, and that the Coastal Parties would expect the disclosure of such facts.

65.    In breach of their duty to the Coastal Parties, and with actual malice or a wanton and willful disregard of the harm to the Coastal Parties, Trump Marina, Trump Entertainment, Juliano, Pickus and John Does 1-100 knowingly failed to make these material disclosures.

66.    Unaware of these material non-disclosures by Trump Marina, Trump Entertainment, Juliano, Pickus and John Does 1-100, the Coastal Parties entered into the Agreement and made the $15,000,000 Initial Deposit, and also entered into the First Amendment, made the $2,000,000 Subsequent Deposit, and agreed to release the $15,000,000 Initial Deposit to Trump Marina and waive any claim or right to the

$15,000,000 Initial Deposit or its return absent actual fraud on the part of Trump Marina, Trump Entertainment or their affiliates.

67.     As a direct and proximate result of their reasonable reliance upon Trump Marina's, Trump Entertainment's, Juliano's, Pickus' and John Does 1-100's non-disclosures, among other non-disclosures, the Coastal Parties have sustained substantial damages, including, but not limited to, the payment of the $15,000,000 Initial and $2,000,000 Subsequent Deposits and the cost of consultants, attorneys, architects and engineers, among other costs.

**WHEREFORE,** plaintiffs Coastal Marina and Coastal Development hereby demand judgment in their favor and against defendants Trump Marina, Trump Entertainment, Juliano, Pickus and John Does 1-100 as follows:

a.     For rescission of the Agreement and First Amendment;

b.     For compensatory damages;

c.     For the return of the $15,000,000 Initial Deposit;

d.     For the release of the $2,000,000 Subsequent Deposit to the Coastal Parties;

e.     For consequential and incidental damages;

f.     For punitive damages;

g.     For attorneys' fees and costs; and,

h.     For all other and further relief as the Court deems just and equitable.

## COUNT III

### (Material Breach of Contract Against Trump Marina and Trump Entertainment)

68.     They repeat and reallege the allegations set forth in paragraphs 1 through 67 as if set forth at length herein.

69.     In Section 7.1(a) of the Agreement, Trump Marina and Trump Entertainment agreed that, during the period from the date of the Agreement and continuing until the earlier of the termination of the Agreement or the Closing, that they would "carry on [Trump Marina's] business in the usual, regular and ordinary course in substantially the same manner as previously conducted . . . and, to the extent consistent with the operation of the Purchased Assets in the Ordinary Course of Business, use commercially reasonable efforts consistent with past practices and policies to preserve intact its present business organization, keep available the services of its present key employees and preserve its relationships with customers . . . ."

70.     In Section 7.1(a)(ix) of the Agreement, Trump Marina and Trump Entertainment agreed that, during the period from the date of the Agreement and continuing until the earlier of the termination of the Agreement or the Closing, would not "fail to maintain the [Casino] in its current repair and condition in all material respects, ordinary wear and tear excepted."

71.     In Section 7.4(a) of the Agreement, entitled "Maintenance of Assets; Budgeted Capital Expenditures; Ownership of Purchased Assets," Trump Marina further agreed that, during the period from the date of the Agreement, it would maintain the Casino "in the Ordinary Course of Business and consistent with past practice, ordinary wear and tear excepted" and would "make the budgeted capital expenditures set forth in

Section 7.4 of the Seller Disclosure Letter within the time periods and amounts indicated thereon."

72.     Pursuant to Section 7.2 of the Agreement, Trump Marina and Trump Entertainment agreed that it would promptly notify the Coastal Parties in writing, and use commercially reasonable efforts to cure, "any event, transactions or circumstance, as soon as practicable after it becomes known to such party, that causes or will cause any covenant or agreement of Seller . . . under this Agreement to be breached in any material respect or that renders or will render untrue in any material respect any representation or warranty of Seller . . . contained in this Agreement."

73.     Trump Marina's and Trump Entertainment's continuing failure to maintain the Casino in the condition that existed as of the date of the Agreement, ordinary wear and tear excepted, to maintain its key employees and relationships with its customers, including High-Rollers, to perform the work set forth in Section 7.4 of the Seller Disclosure Letter, to notify the Coastal Parties of these failures, and to use reasonably commercial efforts to cure their failures constitute material breaches of their obligations under the Agreement and First Amendment.

74.     Trump Marina's and Trump Entertainment's transferring of key marketing and customer relations personnel from the Casino to the other hotels and casinos owned and/or controlled by Trump Entertainment and its affiliates, including Trump Plaza and Trump Taj Mahal constitute material breaches of their obligations under the Agreement and First Amendment.

75.     These material breaches by Trump Marina and Trump Entertainment relieve Coastal Marina from its obligation to purchase the Casino and entitle Coastal Marina to the return of the Initial and Subsequent Deposits, as well as damages including

(but not limited to) the Coastal Parties' consulting, architectural, engineering and legal fees and other costs and expenses incurred in connection with the Asset Purchase Agreement and First Amendment.

**WHEREFORE**, plaintiff Coastal Marina hereby demands judgment in its favor and against defendants Trump Marina and Trump Entertainment as follows:

a.   For compensatory damages;

b.   For the return of the $15,000,000 Initial Deposit;

c.   For the release of the $2,000,000 Subsequent Deposit to the Coastal Parties;

d.   For consequential and incidental damages; and,

e.   For all other and further relief as the Court deems just and equitable.

### COUNT IV

### (Breach of Covenant of Good Faith and Fair Dealing Against Trump Marina and Trump Entertainment)

76.   They repeat and reallege the allegations set forth in paragraphs 1 through 75 of the Complaint as if set forth at length herein.

77.   In every contract governed by the law of the State of New Jersey, there is an implied covenant on the part of each party to the contract to act honestly and truthfully, as well as to deal with the other party or parties fairly and in good faith.

78.   The wrongful actions of Trump Marina and Trump Entertainment as to the Agreement and First Amendment described above breached the covenant of good faith and fair dealing.

79.   As a result of the Trump Marina's and Trump Entertainment's conduct, the Coastal Parties have suffered damages.

**WHEREFORE**, plaintiffs Coastal Marina and Coastal Development hereby demand judgment in their favor and against defendants Trump Marina and Trump Entertainment as follows:

a.  For compensatory damages;

b.  For the return of the $15,000,000 Initial Deposit;

c.  For the release of the $2,000,000 Subsequent Deposit to the Coastal Parties;

d.  For consequential and incidental damages; and,

e.  For all other and further relief as the Court deems just and equitable.

## COUNT V

### (Declaratory Judgment Pursuant to 28 U.S.C. § 2201)

80.    They repeat and reallege the allegations set forth in paragraphs 1 through 79 of the Complaint as if set forth at length herein.

81.    The $2,000,000 Subsequent Deposit is currently being held in escrow by nominal defendant Fidelity National.

82.    Section 9.3(b) of the Agreement provides that the Coastal Parties maintain an interest in the $2,000,000 Subsequent Deposit until the Closing occurs or a transfer of the $2,000,000 Subsequent Deposit under Section 9.3 of the Agreement and First Amendment occurs.

83.    Section 9.3(b) of the Agreement further provides that Trump Marina is not entitled to the $2,000,000 Subsequent Deposit if Trump Marina, Trump Entertainment or any of their affiliates engages in actual fraud and/or if the Agreement and First Amendment are rejected in bankruptcy court.

84.     Trump Marina, Trump Entertainment and/or their affiliates have committed actual fraud against the Coastal Parties as described herein and, therefore, the Coastal Parties are entitled to the return of the $2,000,000 Subsequent Deposit pursuant to Section 9.3(b) of the Agreement.

85.     As a result, the $2,000,000 Subsequent Deposit does not constitute property of the estates of Trump Marina or Trump Entertainment and should be turned over and paid to the Coastal Parties.

**WHEREFORE**, plaintiffs Coastal Marina and Coastal Development hereby demand judgment in their favor and against defendants Trump Marina and Trump Entertainment and nominal defendant Fidelity National as follows:

> a.   For an Order declaring that the $2,000,000 Subsequent Deposit is not property of the estates of Trump Marina, Trump Entertainment or any of the debtors in these jointly administered bankruptcy proceedings;

> b.   For an Order authorizing and directing Fidelity National to release and deliver the $2,000,000 Subsequent Deposit to the Coastal Parties; and

> c.   For all other and further relief as the Court deems just and equitable.

## COUNT VI

### (Declaratory Judgment Pursuant to 28 U.S.C. §2201 and 11 U.S.C. §§ 363 and 365)

86.     They repeat and reallege the allegations set forth in paragraphs 1 through 85 of the Complaint as if set forth at length herein.

87.     Trump Marina's purported termination of the Agreement and First Amendment was outside the ordinary course of the business of Trump Marina and Trump

Entertainment and therefore required the approval of this Court under Section 363 of the Bankruptcy Code. Without such approval, the purported termination is ineffective.

88.     In addition, or in the alternative, Trump Marina's purported termination of the Agreement and First Amendment, while Trump Marina and Trump Entertainment were in material breach thereof and did not have any ability to cure their breaches, constituted a *de facto* rejection of the Agreement and First Amendment. Such an attempted rejection also required the approval of this Court under Section 365 of the Bankruptcy Code. Without such approval, the purported termination is ineffective. Accordingly, this Court should enter an Order authorizing and ratifying the *de facto* rejection.

89.     Based on Trump Marina's *de facto* rejection of the Agreement and First Amendment, the Coastal Parties are entitled to the return of the $2,000,000 Subsequent Deposit pursuant to Section 9.3(a) (ii) of the Agreement.

90.     As a result, the $2,000,000 Subsequent Deposit does not constitute property of the estate of Trump Marina or Trump Entertainment and should be turned over to the Coastal Parties.

**WHEREFORE**, plaintiffs Coastal Marina and Coastal Development hereby demand judgment in their favor and against Defendants Trump Marina and Trump Entertainment and nominal defendant Fidelity National as follows:

a.      For an Order declaring that (i) the Agreement and First Amendment are deemed rejected under Section 365 of the Bankruptcy Code and (ii) the $2,000,000 Subsequent Deposit is not property of the estates of Trump Marina, Trump Entertainment or any of the other debtors in these jointly administered proceedings;

    b.    For an Order authorizing and directing Fidelity National to release and deliver the $2,000,000 Subsequent Deposit to the Coastal Parties; and

    c.    For all other and further relief as this Court deems just and proper.

## COUNT VII

### (Constructive Trust against Trump Marina and ABC Corporations 1-100)

91.    They repeat and reallege the allegations set forth in paragraphs 1 through 90 of the Complaint as if set forth at length herein.

92.    Pursuant to section 541(d) of the Bankruptcy Code, property in which a debtor holds, as of the commencement of the case, only legal title and not an equitable interest becomes property of the estate only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

93.    Trump Marina has no legal or equitable claim to the $15,000,000 Initial Deposit as it obtained the $15,000,000 Initial Deposit through the fraud and deceit as alleged herein.

94.    As a matter of equity, Trump Marina holds the $15,000,000 Initial Deposit merely as a constructive trustee for the benefit of the Coastal Parties.

95.    To the extent that the $15,000,000 Initial Deposit, or any portion thereof, is no longer in the possession of Trump Marina and has been transferred to ABC Corporations 1-100, any legal or equitable claim those corporations may have is subject to the Coastal Parties' interests and subject to the constructive trust.

**WHEREFORE**, plaintiffs Coastal Marina and Coastal Development hereby demand judgment in their favor and against defendant Trump Marina and ABC Corporations 1-100 as follows:

a.   For an order declaring that the sum of Fifteen Million Dollars ($15,000,000) plus any revenues, profits, properties and assets derived, directly or indirectly, by Trump Marina or ABC Corporations 1-100 from the receipt of the $15,000,000 Initial Deposit are being held in constructive trust for the benefit of the Coastal Parties and directing that these defendants be required to provide a full and detailed accounting to the Coastal Parties of all transfers, revenues, profits, properties and assets derived from the wrongdoing set forth in this Complaint;

b.   For an order directing Trump Marina or ABC Corporations 1-100 to disgorge the sum of Fifteen Million Dollars ($15,000,000) plus any revenues, profits, properties and assets derived from their receipt of the $15,000,000 Initial Deposit, directly or indirectly, to the Coastal Parties plus interest from the date(s) the $15,000,000 Initial Deposit was transferred to the Trump Marina and/or ABC Corporations 1-100; and,

c.   For all other and further relief as this Court deems just and proper.

## COUNT VIII

**(Tortious Interference with Contractual Rights
Against Juliano, Pickus, Trump Plaza, Trump Taj Mahal, ABC Corporations 1-100
and John Does 1-100)**

96.   They repeat and reallege the allegations set forth in paragraphs 1 through 95 of the Complaint as if set forth at length herein.

97.   Juliano, Pickus, Trump Plaza, Trump Taj Mahal, ABC Corporations 1-100, and John Does 1-100 were aware of the existence of the Agreement, First Amendment and the obligations of the Trump Marina and Trump Entertainment and rights of the Coastal Parties thereunder.

98.   Notwithstanding that knowledge, Juliano, Pickus, Trump Plaza, Trump Taj Mahal, ABC Corporations and John Does 1-100 interfered with the Coastal Parties' contractual rights by causing Trump Marina and Trump Entertainment to divert customers and key employees from the Casino.

99.   Juliano, Pickus, Trump Plaza, Trump Taj Mahal, ABC Corporations 1-100 and John Does 1-100 acted intentionally and without justification or excuse in connection with their solicitation of key employees, personnel, existing customers, High Rollers and potential customers of the Trump Marina, and further acted with actual malice or a wanton and willful disregard of the rights of the Coastal Parties.

100.   The Casino has suffered harm as a result of the improper acts of Juliano, Pickus, Trump Plaza, Trump Taj Mahal, ABC Corporations 1-100 and John Does 1-100 in the form of lost revenue and good will, and the loss of customers, all of which has caused the Coastal Parties substantial damages.

**WHEREFORE**, plaintiffs Coastal Marina and Coastal Development hereby demand judgment in their favor and against defendants Juliano, Pickus, Trump Plaza, Trump Taj Mahal, ABC Corporations 1-100 and John Does 1-100 as follows:

a.   For compensatory damages;

b.   For the return of the $15,000,000 Initial Deposit;

c.   For the release of the $2,000,000 Subsequent Deposit to the Coastal Parties;

d.   For consequential and incidental damages;

e.   For punitive damages;

f.   For attorneys' fees and costs; and,

g.   For all other and further relief as the Court deems just and equitable.

## COUNT IX

### (Civil Conspiracy)

101.    They repeat and reallege the allegations set forth in paragraphs 1 through 100 of the Complaint as if set forth at length herein.

102.    Trump Marina, Trump Entertainment, Juliano, Pickus, Trump Plaza, Trump Taj Mahal, ABC Corporations 1-100 and John Does 1-100 entered into an agreement and a conspiracy to commit fraud and to tortiously interference with the Coastal Parties' contractual rights by (a) diverting customers (potential, existing and High Rollers) and key employees from the Casino to other hotels and casinos owned and or controlled by defendants or their affiliates; (b) failing to properly and adequately maintain and invest in the Casino in the usual, regular and ordinary course in substantially the same manner as Trump Marina conducted before the execution of the Agreement and the First Amendment; and (c) failing to use commercially reasonable efforts consistent with past practices to preserve and invest in the Casino.

103.    In furtherance of the unlawful conspiracy, Trump Marina, Trump Entertainment, Juliano, Pickus, Trump Plaza, Trump Taj Mahal, ABC Corporations 1-100 and John Does 1-100 knowingly and intentionally concealed their actions from the Coastal Parties and represented to the Coastal Parties that they were in compliance with their obligations under the Agreement and First Amendment.

104.    As a result of the unlawful conspiracy, the Coastal Parties have suffered damages.

105.    The harm suffered by the Coastal Parties was actuated by the bad faith and actual malice of these defendants or their wanton and willful disregard of the rights of the Coastal Parties.

**WHEREFORE**, plaintiffs Coastal Marina and Coastal Development hereby demand judgment in their favor and against defendants Trump Marina, Trump Entertainment, Juliano, Pickus, Trump Plaza, Trump Taj Mahal, ABC Corporations 1-100 and John Does 1-100 as follows:

a.    For compensatory damages;

b.    For the return of the $15,000,000 Initial Deposit;

c.    For the release of the $2,000,000 Subsequent Deposit to the Coastal Parties;

d.    For consequential and incidental damages;

e.    For punitive damages;

f.    For attorneys' fees and costs; and,

g.    For all other and further relief as the Court deems just and equitable.

## JURY DEMAND

The Coastal Parties hereby demands a jury on all issues so triable in this Adversary Complaint.

Dated: July 28, 2009

/s/ Vincent F. Papalia
Vincent F. Papalia, Esq.
James H. Forte, Esq.
Mark A. Roney, Esq.
**SAIBER LLC**
One Gateway Center, 13th Floor
Newark, New Jersey 07102-5311

- and -

**MOSKOWITZ, MANDELL, SALIM & SIMOWITZ, P.A.**
800 Corporate Drive, Suite 500
Fort Lauderdale, Florida 33334

*Attorneys for Coastal Marina, LLC and Coastal Development, LLC*